IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CHARLES EDDY,**
    **Plaintiff,**

v.

    Case No. 2:04-CV-465
    JUDGE EDMUND A. SARGUS, JR.
    Magistrate Judge Mark R. Abel

**THOMAS HAYES, Director of the
Ohio Department of Job and Family
Services, et al.,**
    **Defendants.**

**OPINION AND ORDER**

This matter is before the Court on the Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint and/or for Qualified Immunity. (Doc. #23). For the reasons that follow, the motion is granted in part and denied in part.

**I.**

Plaintiff, Charles Eddy ["Plaintiff"], brings this action claiming that he was discriminated and retaliated against on account of his disability, retaliated against in violation of the First Amendment and deprived of procedural due process in violation of the Fourteenth Amendment, by his former employer, the Ohio Department of Job and Family Services ["ODJFS"][1]. Plaintiff seeks relief under the Americans with Disabilities Act ["ADA"], 42 U.S.C. § 12101, *et seq.*, and 42 U.S.C. § 1983. The Defendants in this action are Thomas Hayes, former Director of the

---

[1] The ODJFS was named as a Defendant in Plaintiff's original complaint but is not named in the Second Amended Complaint.

ODJFS; Barbara Riley, current Director of the ODJFS; Joan Van Hull, Outcome Management Bureau Chief of the ODJFS; Dorothy Hughes, Section Chief for the Bureau of Outcome Management of the ODJFS; Kathryn A. Nowack, Deputy Director of the ODJFS; and Keith Nichols, Deputy Director of the ODJFS. With the exception of Defendant Riley, Plaintiff indicates that Defendants are sued in their individual capacities only. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

Plaintiff filed a Second Amended Complaint in this case on March 15, 2005. Plaintiff was employed by the ODJFS for thirteen and a half years, most recently as a Human Service Program Developer 2 ["HSPD 2"]. Plaintiff suffers from "major depressive disorder . . . ." (*Second Am. Compl.* at ¶ 11). On December 1, 2002, Defendant Nichols informed Plaintiff that his job was being eliminated "due to a lack of work." (*Id.* at ¶ 13). Plaintiff was transferred to a job in which he was to "perform the duty of taking phone reports from child victims of physical and/or sexual abuse, as a 20-30% percentage of his overall job duties . . . ." (*Id.* at ¶ 14). Plaintiff suffered a "severe episode of major depressive disorder as a result of the graphic, traumatic nature of the . . .abuse reports . . . ." (*Id.*). Plaintiff requested to transfer to another position but the request was denied, allegedly on account of Plaintiff's disability. (*Id.*).

Plaintiff was notified on January 10, 2003 that he was being "involuntarily separated due to his inability to perform the duties of his position . . . ." (*Id.* at ¶ 15). On March 1, 2003, Plaintiff applied for a HSPD 2 position which did not include the responsibility of taking child abuse reports. (*Id.* at ¶ 16). The position was closed for unspecified reasons and was allegedly never re-posted. (*Id.* at ¶ 18). On August 22, 2003, Plaintiff requested a "reasonable accommodation for his disability" but the request was denied on September 16, 2003. (*Id.* at ¶

2

19). From October 2003 to February 2005, Plaintiff applied for twenty-nine HSPD 2 positions that did not require taking telephone reports of child abuse. Plaintiff claims that he was qualified for these positions but was denied employment or the positions were withdrawn "due to [Plaintiff's] disability . . . ." (*Id.* at ¶¶ 21-22). Plaintiff also claims that he was retaliated against for the exercise of his rights under the ADA. (*Id.* at ¶ 20).

Plaintiff claims that he had a property interest in his continued employment and Defendants "failed to provide Plaintiff with pre-deprivation due process of law" in connection with the termination of his employment. (*Id.* at ¶ 31). Plaintiff also claims that Defendants retaliated against him for exercising his First Amendment right to complain about the alleged discriminatory treatment. (*Id* at ¶ 33).

The Defendants move to dismiss Plaintiff's Second Amended Complaint. In the alternative, the Defendants move for qualified immunity as to Plaintiff's § 1983 claims. With the foregoing facts in mind, the Court considers the merits of this motion.

## II.

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "should not be granted unless it appears beyond a doubt that the Plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46(1957). In considering the motion to dismiss, this Court must construe the complaint liberally in the non-movant's favor and accept as true all factual allegations and permissible inferences therein. *Westlake v. Lucas,* 537 F .2d 857, 858 (6th Cir. 1976).

3

A "complaint need not set down in detail all the particularities of a plaintiff's claim" *Westlake,* 537 F. 2d at 858, the complaint must give the defendant "fair notice of what the plain claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47. Thus, a 12(b)(6) motion tests whether the plaintiff has stated a claim for which the law provides relief. *Cheriee Gazette v. City of Pontiac,* 41 F .3d 1061, 1064 (6th Cir. 1994). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

### III.

**A. Plaintiff's ADA Claims**

Defendants move to dismiss Plaintiff's ADA claims for several reasons. First, they argue that there is no individual liability under the ADA. Second, the Defendants argue that the ADA disability discrimination claim is barred by the doctrine of sovereign immunity. Third, the Defendants argue that Plaintiff cannot state a claim for retaliation under the ADA.

Defendants' first argument is well-taken. The ADA does not impose liability on persons in an individual capacity. *See Sullivan v. River Valley School District,* 197 F.3d 804, 808 (6th Cir. 1999). Thus, to the extent Plaintiff seeks to hold the Defendants personally liable, the ADA claim is without merit.

As noted above, the ODJFS, an arm of the State of Ohio, is not named as a Defendant in this case. To the extent Plaintiff sues Defendant Barbara Riley in an official capacity, Plaintiff's claim is essentially one against the State. In *Board of Trustees of the University of Alabama v.*

4

*Garrett*, 531 U.S. 356 (2001), the Supreme Court held that, pursuant to the Eleventh Amendment[2], states are immune from suits for money damages under Title I of the ADA, which prohibits employment discrimination on the basis of disability. Thus, to the extent Plaintiff seeks to hold Defendant Riley liable in an official capacity for money damages under the ADA, she is immune from suit. Plaintiff does, however, seek prospective injunctive relief for the alleged ADA violation. To this extent, under the doctrine of *Ex Parte Young*, 209 U.S. 160-62 (1908), the Eleventh Amendment does not shield a state official from suit. *See Martin v. Taft*, 222 F.Supp.2d 940, 959-60 (S.D. Ohio 2002). Thus, this portion of Plaintiff's ADA claim against Defendant Riley survives the Defendants' motion to dismiss.

Defendants also assert that Plaintiff cannot state a claim for retaliation on the basis of disability under § 1983. The Court reads Plaintiff's complaint as asserting a claim for retaliation not only under § 1983 but also under the ADA. (*Second Am. Compl.* at ¶ 20). In *Maine v. Thiboutot*, 448 U.S. 1 (1980), the Supreme Court held that § 1983 provides a remedy for deprivation of rights secured not only under the Constitution, but under federal statutory laws[3]. The Court is not convinced, at this juncture in the action, that Plaintiff could prove no set of facts that would entitle him to relief on a claim for retaliation in violation of the ADA or § 1983.

---

[2]The Eleventh Amendment states:
The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
U.S. CONST. amend. XI.
    The Supreme Court has held that Eleventh Amendment immunity also precludes suits in federal court against a State by its own citizens. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997).

[3]Again, while Plaintiff could not recover damages against the state, he could be entitled to injunctive relief under § 1983.

Thus, Defendants' motion to dismiss this aspect of Plaintiff's claim is without merit.

**B. Plaintiff's § 1983 Claims**

Plaintiff seeks relief under 42 U.S.C. § 1983 for alleged violations of the First and Fourteenth Amendments to the United States Constitution. Plaintiff claims that Defendants failed to provide him with procedural due process before terminating his employment. Plaintiff also claims that he was retaliated against for speaking freely in violation of First Amendment.

**1. First Amendment Claim**

Defendants seek dismissal of the First Amendment claim on the basis that Plaintiff's speech was not a matter of public concern sufficient to support a § 1983 claim. The First Amendment to the United States Constitution, applicable to state and local governments through the Fourteenth Amendment, mandates against "abridging the freedom of speech . . . ." U.S. CONST. amend. I. The First Amendment's protection of free speech extends to speech by a public employee when the employee speaks as a citizen on matters of public concern. The First Amendment does not, however, protect an employee's speech made solely in the course of his or her public employment. *Connick v. Myers*, 461 U.S. 138, 147 (1983).

To state a claim for retaliation on the basis of exercise of First Amendment rights pursuant to 42 U.S.C. § 1983, Plaintiff must prove the following three elements: First, that he engaged in a constitutionally protected activity; second, that the Defendants' adverse action caused him to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and third, that the adverse action was motivated, at least in

6

part, as a response to the exercise of Plaintiff's constitutional rights. *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000) (citations omitted). If Plaintiff can establish these three elements of his First Amendment retaliation claim, the burden of persuasion then shifts to Defendants to show by a preponderance of the evidence, that they "would have taken the same action even in the absence of protected conduct." *Leary*, 228 F.3d at 737, quoting *Jackson v. Leighton*, 168 F.3d 903, 909 (6th Cir. 1999).

Since Plaintiff is a public employee, he must make specific showings to demonstrate that his speech is constitutionally protected. First, he must show that his speech touched on matters of public concern. *Id.*, citing *Connick*, 461 U.S. at 146. Second, Plaintiff's interest "in commenting upon matters of public concern" must be found to outweigh "the interest of the State [or its subdivision], as an employer, in promoting the efficiency of the public service it performs through its employees." *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). Whether a Plaintiff's speech is constitutionally protected is a question of law for this Court to determine. *Connick*, 461 U.S. at 148. In assessing a free speech case, it is the Court's obligation to make an independent examination of the whole record to assure against a forbidden intrusion on the field of free expression. *Bose Corp. v. Consumers Union of the United States, Inc.*, 466 U.S. 485, 499 (1984), quoting *New York Times v. Sullivan*, 376 U.S. 254, 285 (1964).

The speech at issue in this case is a December 2002 letter of complaint Plaintiff wrote to ODJFS Director Thomas Hayes requesting a transfer and Plaintiff's complaint to his former supervisor about alleged discriminatory treatment on account of his disability. (*Second Am. Compl.* at ¶ 14; *Memorandum contra* at 4). According to Defendants, an employee's complaints about alleged discriminatory treatment by his employer is not a matter of public concern for First

7

Amendment purposes. Indeed, in *Connick*, the court stated that speech that is only of particular interest to the speaker cannot form the basis of a First Amendment retaliation claim. 461 U.S. at 147; *see also Farmer v. Cleveland Public Power*, 295 F.3d 593, 600-01 (6th Cir. 2002) (holding that an employee's complaint about failure to be promoted is not a matter of public concern)[4].

Assuming Plaintiff's allegations as true, the Court finds that Plaintiff could prove no set of facts that would entitle him to relief under a theory of First Amendment retaliation. Plaintiff's speech amounts to complaints of a purely personal nature and does not touch on a matter of public concern for First Amendment purposes. Consequently, the Defendants' motion to dismiss Plaintiff's First Amendment claim is meritorious.

### 2. Fourteenth Amendment Claim

Defendants move to dismiss Plaintiff's claim under the Fourteenth Amendment for alleged denial of procedural due process in connection with his termination from employment.

In his Second Amended Complaint, Plaintiff fails to indicate whether he is a classified civil service employee under Ohio law, R.C. § 124.11(B)[5]. The Defendants do not address this issue, which is of constitutional moment. If Plaintiff has a constitutionally protected interest in his prior public employment, such right is created under state law. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). The Court cannot speculate at the pleadings stage as to

---

[4] In *Farmer*, the Sixth Circuit recognized that First Amendment protects speech that involves mixed issues of public and private concern. Plaintiff's complaint in this case does not implicate an issue of mixed speech.

[5] This provision states that "[t]he classified service shall comprise all persons in the employ of the state and the several counties, cities, city health districts, general health districts, and city school districts thereof, not specifically included in the unclassified service." R.C. § 124.11(B).

whether Plaintiff did nor did not have civil service status or some other state law protection sufficient to create a "property right in continued employment," as noted in *Loudermill*, and subject to constitutional protection. Consequently, the Defendants' Motion to Dismiss the Plaintiff's Fourteenth Amendment claim is denied.

**C. Qualified Immunity**

Defendants argue that, even if dismissal of Plaintiff's § 1983 claims is not appropriate, they are entitled to qualified immunity. As stated above, the Court dismisses the First Amendment claim but not the Fourteenth Amendment claim.

The doctrine of qualified immunity operates to shield "government officials performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The first step in a qualified immunity analysis is to determine whether Defendants' conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If a constitutional violation is found, the Court must then decide whether a reasonable official would, at the time the act was committed, understand that his conduct violated a right. *Id.* A government official will be entitled to immunity as long as the conduct does not violate a clearly established right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Sixth Circuit has observed that a right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violations occurred. *Durham v. Nu'man*, 97 F.3d 862, 866 (6th Cir. 1996), citing *Robinson v. Bibb*, 840

F.2d 349, 351 (6th Cir. 1988).

As stated *supra*, the Court cannot determine, at this juncture, whether a constitutional violation of due process has occurred. Consequently, the Court cannot conclusively decide that Defendants are entitled to qualified immunity on Plaintiff's Fourteenth Amendment claim. The defense may be renewed at a later stage in this action.

### IV.

For the foregoing reasons, the Defendants' Motion to Dismiss (**Doc. #23**) is **GRANTED in part and DENIED in part.**

**IT IS SO ORDERED.**

10-17-2005
**DATE**

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE